UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE RAFAEL HINOJOSA GARCIA,

        Petitioner,

v.

KRISTI NOEM *et al.*,

        Respondents,

Case No.:  2:25-cv-00879-SPC-NPM

## **OPINION AND ORDER**

Before the Court are Jose Rafael Hinojosa Garcia's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and for Immediate Release or, in the Alternative, a Prompt Individualized Bond Hearing (Doc. 1), the government's response (Doc. 14), and Hinojosa Garcia's reply (Doc. 15).  For the below reasons, the Court grants the petition in part.

Hinojosa Garcia is a Mexican national who entered the United States in or around 2007 without inspection.  He has lived in this country since then and has two children who are American citizens.  In 2017, he filed a Petition for U Nonimmigrant Status, which is currently pending with U.S. Citizenship and Immigration Services ("USCIS").  USCIS granted Hinojosa Garcia employment authorization through August 22, 2026.

Immigration and Customs Enforcement ("ICE") arrested Hinojosa Garcia on September 18, 2025, and detained him at Alligator Alcatraz. ICE has since transferred Hinojosa Garcia to Krome Detention Center. The Department of Homeland Security ("DHS") commenced removal proceedings against Hinojosa Garcia on September 20, 2025, and issued a notice to appear ("NTA"), although Hinojosa Garcia claimed he had not received it as of his October 3, 2025, petition.

The core of the dispute before this Court is whether 8 U.S.C. § 1225(b)(2) or § 1226(a) of the Immigration and Nationality Act ("INA") applies to Hinojosa Garcia. The distinction matters because Section 1225(b)(2) mandates detention, while aliens detained under Section 1226(a) have the right to a bond hearing before an immigration judge. Hinojosa Garcia asks the Court to order the respondents to either release him or provide a prompt bond hearing.[1]

**A. Subject-Matter Jurisdiction**

The respondents argue the INA divests the Court of jurisdiction over Hinojosa Garcia's petition. They first point to a provision of the INA that bars courts from hearing certain claims. It states:

---

[1] Hinojosa Garcia's petition challenges the respondents' authority to detain him with or without bond because at the time, they had "presented no legal justification for his ongoing detention." (Doc. 1 at 7). That argument appears stale now that DHS has commenced removal proceedings.

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). This jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original); *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." *Canal A Media Holding, LLC v. United States Citizenship and Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The respondents cite two cases to support their argument that Section 1252(g) strips the Court of jurisdiction to consider Hinojosa Garcia's claims: *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013) and *Alvarez v. ICE*, 818 F.3d

3

1194, 1203 (11th Cir. 2016). In both cases, the plaintiffs filed *Bivens*[2] actions against ICE officials after their release from detention. The Eleventh Circuit found Section 1252(g) barred both actions because they challenged methods the defendants used to commence removal proceedings.

The factual and legal scenario presented in this case differs from *Gupta* and *Alverez*. Hinojosa Garcia does not challenge the respondents' decision to commence removal proceedings against him, the decision to arrest and detain him, or the methods by which he is detained. Rather, Hinojosa Garcia challenges the Attorney General's treatment of him as an "alien seeking admission," whose detention is governed by Section 1225(a)(2) rather than Section 1226(a). *Cf. Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) ("While [Section 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions.").

Hinojosa Garcia asks the Court to answer a legal question—whether he is subject to mandatory detention under Section 1225(b)(2) or discretionary detention under Section 1226(a). He does not ask the Court to second-guess the respondents' discretionary decision to commence removal proceedings against him. Section 1252(g) does not bar this action. *See Grigorian v. Bondi*,

---

[2] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

4

No. 25-CV-22914-RAR, 2025 WL 2604573, at *3-4 (S.D. Fla. Sept. 9, 2025) (finding Section 1252(g) inapplicable to an alien's challenge of immigration detention based on ICE's noncompliance with statutory requirements when revoking an order of supervised release).

The respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court should have jurisdiction, by habeas corpus under section 2241 or title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). Specifically, they argue that because Hinojosa Garcia challenges ICE's detention determination, which they characterize as "an action arising from its choice to commence removal proceedings," the zipper clause applies. (Doc. 14 at 6–7).

Not so. By invoking the zipper clause, the respondents apparently adopt the "throw spaghetti at the wall and see what sticks" approach. Supreme Court and Eleventh Circuit precedent is clear. The zipper clause only applies to claims requesting review of a removal order. *See Madu*, 470 F.3d at 1365 (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation). Hinojosa Garcia

5

is "not asking for review of an order of removal;" he is not "challenging the decision to detain [him] in the first place or to seek removal;" and he is "not even challenging any part of the process by which [his] removability will be determined." *Jennings*, 583 U.S. at 294. The zipper clause does not apply.

### B. Exhaustion of Administrative Remedies

The respondents next argue the Court should dismiss this action because Hinojosa Garcia has not exhausted available administrative remedies by requesting a bond hearing. Hinojosa Garcia asks the Court to excuse administrative exhaustion because it would be futile. In *Matter of Yajure Hurtado*, the Board of Immigration Appeals ("BIA") held that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." 29 I&N Dec. 216, 220 (B.I.A. 2025).

Plaintiffs need not exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992); *see also Shalala v. Ill. Counsel on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Requiring Hinojosa Garcia to make an administrative request for a bond

hearing would be futile because the result is predetermined by *Yajure Hurtado*. District courts around the country have reached the same conclusion.[3] Under these circumstances, the Court finds good cause to excuse exhaustion.

### C. Legal Basis for Detention

Hinojosa Garcia asserts the respondents are detaining him in violation of the Fifth Amendment's Due Process Clause and the INA. The key question is whether Hinojosa Garcia's detention is governed by Section 1225(b)(2), which mandates detention, or Section 1226(a), which allows for release on bond. The respondents argue Hinojosa Garcia is an "alien seeking admission" under Section 1225(b)(2) because he entered the United States without inspection. They contend it does not matter how long he has been in the country. Hinojosa Garcia argues he is not an "alien seeking admission" because he has been living in this country for years, so Section 1226(a) applies.

The plain language of the statute supports Hinojosa Garcia's position, as do the legislative history and case law. Section 1225(b)(2) mandates the

---

[3] *See, e.g., Contreras-Lomeli v. Raycraft*, No. 2:25-cv-12826, 2025 WL 2976739, at *3 (E.D. Mich. Oct. 21, 2025); *H.G.V.U. v. Smith*, No. 25-cv-10931, 2025 WL 2962610, at *4 (N.D. Ill. Oct. 20, 2025); *Sanchez Alvarez v. Noem*, No. 1:25-cv-1090, 2025 WL 2942648, at *2–3 (W.D. Mich. Oct. 17, 2025); *Puga v. Assistant Field Office Director, Krome North Service Processing Center*, No. 25-24535-CIV-ALTONAGA, 2025 WL 2938369, at *2 (S.D. Fla. Oct. 15, 2025); *Ballestros v. Noem*, No. 3:25-cv-594-RGJ, 2025 WL 2880831, at *3 (W.D. Ky. Oct. 9, 2025); *Artiga v. Genalo*, No. 25-CV-5208-OEM, 2025 WL 2829434, at *3–4 (E.D. N.Y. Oct. 5, 2025); *Inlago Tocagon v. Moniz*, No. 25-cv-12453, 2025 WL 2778023, at *2 (D. Mass. Sept. 29, 2025); *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3–4 (S.D. Cal. Sept. 24, 2025); *Vasquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, at *9–10 (D. Nev. Sept. 17, 2025).

7

detention of applicants for admission "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to admission[.]" The INA defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). By using the term "seeking admission," Section 1225(b)(2) limits its application to aliens actively attempting to lawfully enter the United States. That interpretation is supported by Section 1225's repeated reference to "arriving aliens"[4] and the existence of Section 1226—a separate statute that allows for detention and removal of noncitizens already present in the country.

The Supreme Court discussed the differences between Sections 1225 and 1226 in *Jennings*. It explained that Section 1225 "authorizes the Government to detain certain aliens seeking admission into the country[,]" while Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289.

---

[4] "The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q).

8

It is no accident that noncitizens in the country are treated differently than those seeking entry. As the Supreme Court observed, "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)); *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

When considering amendment of the INA in 1996, Congress again acknowledged that noncitizens present in the United States have more substantial due process rights than new arrivals. *See* H.R. Rep. 104-469, p.1, at 163–66 (recognizing "that an alien present in the U.S. has a constitutional liberty interest to remain in the U.S., and that this liberty interest is most significant in the case of a lawful permanent resident alien"). Following the amendment, federal regulations explained, "Despite being applicants for admission, aliens who are present without having been admitted or paroled

9

(formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

Despite this history, DHS announced a change to its policies in a memo to ICE employees dated July 8, 2025:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

*ICE Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission*, AILA Doc. No. 25071607 (July 8, 2025) (emphasis in original); *see also Merino v. Ripa*, 2025 WL 2941609, at *3 (S.D. Fla. Oct. 15, 2025) (discussing the memo). The BIA adopted and applied this new policy in *Matter of Yajure Hurtado*, *supra*.

DHS's new interpretation flies in the face of the plain language and historical understanding of the INA discussed above. It also nullifies Congress's recent amendment of the INA through the Laken Riley Act, codified at 8 U.S.C. § 1226(c)(1)(E). The amendment mandates detention of noncitizens

who meet certain criminal and inadmissibility criteria. If mere inadmissibility already made detention of a resident noncitizen mandatory under Section 1225, the Laken Riley Act would have no effect.

Since DHS's change in policy, courts in this District and around the country have rejected its new interpretation of the INA.[5] This Court agrees with the growing consensus. It is undisputed that Hinojosa Garcia has been in this country since around 2007. His detention is thus governed by Section 1226(a). As a noncitizen detained under Section 1226(a), Hinojosa Garcia has a right to a bond hearing. *See Jennings*, 583 U.S. at 306 ("Federal regulations

---

[5] *See, e.g.*, *Hernandez Lopez v. Hardin*, No. 2:25-cv-830-KCD-NPM, 2025 WL 3022245 (M.D. Fla. Oct. 29, 2025); *Aguilar Guerra v. Joyce*, 2:25-cv-534-SDN, 2025 WL 2986316 (D. Maine Oct. 23, 2025); *Contreras Maldonado v. Cabezas*, No. 25-cv-13004, 2025 WL 2985256 (D. N.J. Oct. 23, 2025); *Gomez Garcia v. Noem*, No. 5:25-cv-02771-ODW (PDx), 2025 WL 2986672 (C.D. Cal. Oct. 22, 2025); *Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650 (D.Colo. Oct. 22, 2025); *Ochoa Ochoa v. Noem*, No. 25-CV-10865, 2025 WL 2938779 (N.D. Ill. Oct. 16, 2025); *N.A. v. Larose*, No. 25-cv-2384-RSH-BLM, 2025 WL 2841989 (S.D. Cal. Oct. 7, 2025); *Lopez-Arevelo v. Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828 (W.D. Tex. Sept. 22, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Samb v. Joyce*, No. 25 Civ. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Maldonado v. Olson*, No. 25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 25-CV-02157-PHX-DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. 25-CV-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Diaz Martinez v. Hyde*, No. 25-CV-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025).

provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

Additionally, Hinojosa Garcia's petition also challenges his detention under the Fifth Amendment and the Administrative Procedure Act ("APA"). These claims are not addressed "given that the Court [is granting] the relief [Hinojosa Garcia] seeks based on its interpretation of the applicability of § 1226(a)." *Pizarro Reyes*, 2025 WL 2609425, at *8. If Respondents do not provide Hinojosa Garcia with a bond hearing as ordered, he can renew his Fifth Amendment and APA claims in a subsequent complaint.

Accordingly, it is hereby

**ORDERED**:

Jose Rafael Hinojosa Garcia's Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and for Immediate Release or, in the Alternative, a Prompt Individualized Bond Hearing (Doc. 1) is **GRANTED in part**.

(1)   The respondents are **DIRECTED** to provide Hinojosa Garcia with the statutory process required under § 1226, which includes a bond hearing.

(2)   All other relief is **DENIED**.

(3)    The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on October 31, 2025.

*SHERI POLSTER CHAPPELL*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties or Record